UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PEDRO COYOTL, RENE TIGRE, and JUAN  :
MANUEL TREJO,                        :
                                     :
                Plaintiffs,      :     **COMPLAINT**
                                     :
      -against-                       :
                                     :
FRANK PRISINZANO, KITCHEN TABLE INC.  :
d/b/a FRANK'S RESTAURANT, RAGUBOY    :     **JURY TRIAL DEMANDED**
CORP. d/b/a SUPPER RESTAURANT, and JUST :
AN OVER CORP. d/b/a LIL' FRANKIE'S,  :
                                     :
                Defendants.      :
-----------------------------------------------------------------X

       Plaintiffs Pedro Coyotl, Rene Tigre, and Juan Manuel Trejo (collectively, "Plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of Defendants Kitchen Table Inc. d/b/a Frank's Restaurant, Raguboy Corp. d/b/a Supper Restaurant, Just an Over Corp. d/b/a Lil' Frankie's, and Frank Prisinzano (collectively, "Defendants"), allege:

## NATURE OF THE COMPLAINT

       1.    Plaintiffs worked in the three restaurants owned and made famous by Frank Prisinzano, a social media celebrity who boasts 185,000 followers on Instagram, 23,000 followers on TikTok, and 11,000 followers on YouTube.

       2.    Plaintiffs regularly worked over forty hours per week, sometimes up to 85 hours per week, but Defendants did not pay them time and a half for the overtime hours they worked each week and sometimes also paid them less than the minimum wage. Furthermore, Plaintiffs did not receive spread-of-hours pay and Defendants failed to provide them with wage notices and wage statements at the end of each pay period, as required by New York law.

3. Plaintiffs bring this action seeking injunctive and declaratory relief against Defendants' unlawful actions and to recover unpaid minimum and overtime wages, unpaid spread-of-hours pay, statutory damages, pre- and post-judgment interest, attorneys' fees, and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL"). and the New York Wage Theft Prevention Act ("WTPA").

## JURISDICTION

4. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

5. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because Franks's Restaurant and Supper Restaurant are located within the Southern District of New York.

## THE PARTIES

**Plaintiffs**

6. Pedro Coyotl resides in Queens County, New York.

7. Defendants employed Coyotl as a prep cook from approximately October 2012 through November 14, 2021.

8. Rene Tigre resides in Essex County, New Jersey.

9. Defendants employed Tigre as a server and administrative assistant from approximately 2003 through January 1, 2022.

10. Juan Manuel Trejo resides in Kings County, New York.

11. Defendants employed Trejo as a busboy, runner, and bartender from approximately November 2018 through January 7, 2022.

**Defendant Kitchen Table Inc.**

12.     Defendant Kitchen Table Inc. is a New York corporation that owns, operates, and does business as Frank's Restaurant ("Frank's"), an Italian restaurant located at 88 Second Avenue, New York, NY 10003.

13.     Frank's is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

14.     Frank's has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

15.     In the three years preceding the filing of this Complaint, Frank's has had an annual gross volume of sales in excess of $500,000.

**Defendant Raguboy Corp.**

16.     Defendant Raguboy Corp. is a New York corporation that owns, operates, and does business as Supper Restaurant ("Supper"), an Italian restaurant located at 156 East 2nd Street, New York, NY 10009.

17.     Supper is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

18.     Supper has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

19.     In the three years preceding the filing of this Complaint, Supper has had an annual gross volume of sales in excess of $500,000.

**Defendant Just An Oven Corp.**

20. Defendant Just An Oven Corp. is a New York corporation that owns, operates, and does business as Lil' Frankie's, an Italian restaurant located at 19 1st Avenue, New York, NY 10003.

21. Lil' Frankie's is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

22. Lil' Frankie's has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

23. In the three years preceding the filing of this Complaint, Lil' Frankie's has had an annual gross volume of sales in excess of $500,000.

**Defendant Frank Prisinzano**

24. Defendant Frank Prisinzano is the owner of Frank's, Supper, and Lil' Frankie's (collectively, the "Frank Restaurants").

25. Prisinzano supervised and directed the Plaintiffs' work and determined the Plaintiffs' rates of pay.

26. Coyotl requested a pay raise from Prisinzano in approximately 2018, which was denied.

27. Prisinzano also determined which of the Frank Restaurant locations employees would be assigned to for work.

28. Prisinzano constantly revised and updated the menus for the Frank Restaurants and determined the specials that would be offered to customers.

29. When he was not present in the restaurants, Prisinzano remained in communication with the managers of the Frank Restaurants and gave final approval for their decisions regarding personnel, pay, and menu changes.

30. Prisinzano was a defendant in four previous lawsuits brought against restaurants that he currently or previously owned alleging similar claims of unpaid wages under the FLSA and NYLL: *Joo et al. v. Kitchen Table Inc. et al.*, 09 Civ. 05402 (RJH) (AJP) (S.D.N.Y. 2009) which was resolved via a confidential settlement; *Perez v. Coda Di Bue LLC et al.*, 14 Civ. 8027 (LTS) (RLE) (S.D.N.Y. 2014) which was resolved via a Consent Judgment for $93,553.75; *Pinguil et al v. We Are All Frank, Inc. et al.*, 17 Civ. 2237 (BCM) (S.D.N.Y. 2017) which was settled for $210,000; and *Huertero-Morales v. Raguboy Corp. et al.*, 17 Civ. 2429 (RWL) (S.D.N.Y. 2017) which settled for $6,000.

31. Prisinzano exercised sufficient control over the operations of the Frank Restaurants to be considered the Plaintiffs' employer under the FLSA and the NYLL.

**Defendants Are Joint Employers**

32. The Frank Restaurants have a high degree of interrelated and unified operations, centralized control of labor relations, common control, common business purposes, interrelated business goals, and common ownership.

33. Prisinzano owns the Frank Restaurants.

34. News publications have identified Prisinzano as the owner and state that the restaurants have common ownership. Making Sauce With Instagram's Mildly Furious, Exceedingly Horny Italian Uncle, Rachel Handler, Grub Street (Jan. 21, 2020); https://www.grubstreet.com/2020/01/making-sauce-with-chef-frank-prisinzano.html ("The 54-year-old chef and owner of East Village mainstays Frank, Lil' Frankie's, and Supper . . .").

35. Frank's, Supper, and Lil' Frankie's each have their own individual websites (frankrestaurant.com, supperrestaurant.com, lilfrankies.com) but the websites link to each other via a tab on each website's homepages entitled "The Family."

36. The Frank's, Supper, and Lil' Frankie's websites each also link directly to Prisinzano's Instagram page.

37. Prisinzano's Instagram page lists all the businesses owned by Prisinzano, including the Frank Restaurants, and he links to their Instagram handles stating, "I want you to meet my children."

38. Coyotl primarily worked at Supper from 2012 through 2018 when Prisinzano reassigned him to work at Frank's full-time.

39. Coyotl did not undergo any new training when he began working at Frank's.

40. Coyotl's job duties, schedule, and rate of pay all remained the same when he moved from working primarily at Supper to working at Frank's.

41. Employees are regularly sent from one of the Frank Restaurant locations to another, based on need. If a restaurant is short staffed one day, employees will be sent to work there and cover shifts.

42. Ingredients, food items, and bottles of wine and beer are shared between the Frank Restaurants on a regular basis. If an item runs out at one location, it is replaced by a delivery from one of the other restaurants.

## FACTUAL ALLEGATIONS

43. Plaintiffs were non-exempt employees under the FLSA and NYLL.

44. Defendants did not furnish Plaintiffs with wage statements with each payment of wages as required by the NYLL.

45. Defendants did not furnish Plaintiffs with wage notices at the time of hiring or when their rates of pay changed that, *inter alia*, accurately reflected their rate or rates of pay and number of hours worked per week, as required by the NYLL.

46. Defendants did not pay Plaintiffs spread-of-hours pay on days that their shifts exceeded ten hours, as required by the NYLL.

47. Plaintiffs took 10 to 15 minute breaks when business was slow, but Defendants did not allow them to leave the premises and they were not given officially designated break times.

**Pedro Coyotl**

48. Coyotl worked as a prep cook throughout his employment with Defendants. He primarily worked making pasta.

49. From the start of his employment through approximately January 2020, Coyotl regularly worked from approximately 8:00 a.m. to 5:00 or 6:00 p.m., six days per week, for a total of about fifty-four to sixty hours per week.

50. From approximately February 2020 through the end of his employment in November 2021, Coyotl regularly worked from approximately 9:00 a.m. to 5:00 p.m., five days per week, for a total of about forty hours of work per week.

51. Coyotl worked at Supper from the start of his employment through in or about January 2018.

52. Starting in or about February 2018, Coyotl was reassigned by Prisinzano to work at Frank's.

53. Throughout 2016 Coyotl was paid a fixed salary of $600 per week.

54. From approximately January 2017 through March 2020, Coyotl was paid a fixed salary of $930 per week.

55. Coyotl did not work for approximately five months from about April 2020 to September 2020 due to the COVID-19 pandemic.

56. When Coyotl returned to work in about September 2020, he was paid $16 per hour for all hours worked, including hours over forty per week.

57. From approximately October 2020 through the end of his employment, Coyotl was paid $18 per hour for all hours worked, including hours over forty per week.

58. Defendants paid Coyotl partially in cash and partially in check until about March 2020.

59. From in or about September 2020 through the end of his employment, Defendants paid Coyotl by check.

60. Defendants did not pay Coyotl overtime pay at one and one half (1 ½) times his regular hourly wage rate for hours worked over forty per week.

**Rene Tigre**

61. Tigre worked as a server from 2016 through the end of his employment with Defendants.

62. Tigre primarily worked at Frank's.

63. Tigre also worked as an administrative assistant from in or about 2018 through October 2021.

64. As an administrative assistant, Tigre helped Anis, the manager at Frank's. Tigre assisted with the restaurant's wine and food orders and helped prepare weekly schedules for the employees. He also assisted with phone calls and restaurant reservations.

65. From 2016 through approximately March 2020, Tigre regularly worked four days per week, from Wednesday through Saturday, from about 10:00 a.m. to 12:00 a.m., for a total of about fifty-six hours per week.

66. Approximately once per month, Tigre also worked on Sundays from about 10:00 a.m. to 10:00 p.m. or 11:00 p.m.

67. Tigre was not paid wages when he worked Sundays and only received tips from customers.

68. At the start of the COVID-19 pandemic, most employees at Frank's stopped working, but Tigre did not take any time off.

69. For a few weeks, Tigre was the only front-of-house employee working at Frank's and starting in April 2020, he and Trejo worked together as the front-of-house staff at Frank's.

70. From on or about April 15, 2020 through about May 31, 2020, Tigre regularly worked seven days per week from about 11:00 a.m. to 10:00 p.m. for a total of about seventy-seven hours per week.

71. From approximately June 2020 through December 2020, Tigre regularly worked five days per week, from Wednesday through Sunday, from about 10:00 a.m. to 12:00 a.m., for a total of about seventy hours per week.

72. In addition to his work as a server, from approximately 2018 through October 2021, Tigre worked as an administrative assistant as needed on Sundays, Mondays, and Tuesdays. He worked approximately fifteen hours per week doing this work.

73. From approximately January 2021 through the end of his employment, Tigre regularly worked four days a week, on Wednesdays from about 5:00 p.m. to 12:00 a.m., Thursdays from about 4:00 p.m. to 12:00 a.m., and Fridays and Saturdays from about 10:00 a.m. to 12:00 a.m., for a total of about forty-three hours per week.

74. When Tigre worked as both a server and administrative assistant within the same week, he worked up to eighty-five weekly hours.

75. From the start of his employment through about April 2020, Defendants paid Tigre $10 per hour for all hours worked as a server, including hours over forty per week.

76. From about April 2020 through September 2020, Defendants paid Tigre $15 per hour for all hours worked as a server, including hours over forty per week.

77. From about October 2020 through the end of his employment, Defendants decreased Tigre's pay back to $10 per hour for all hours worked as a server.

78. As an administrative assistant, Tigre was paid a fixed salary of $400 per week.

79. Tigre was primarily paid via check but, on occasion, he was paid in cash instead.

80. Defendants paid Tigre below the statutory minimum wage rate of $15 per hour for his work as a server.

81. Although Tigre worked as a tipped employee when working as a server, Defendants did not provide notice of the tip credit provisions of the FLSA and the NYLL, or an intent to apply a tip credit to his wages. As such, Defendants were not entitled to apply a tip credit to Tigre's wages at any time during his employment.

82. Defendants did not pay Tigre overtime pay at one and one half (1 ½) times his regular hourly wage rate for hours worked over forty per week.

**Juan Manuel Trejo**

83. Trejo primarily worked as a busboy but also was assigned to work as a runner, bartender, host, and delivery worker as needed.

84. Trejo primarily worked at Frank's.

85. From November 2018 through March 2020, Trejo regularly worked five or six days per week. His schedule varied from week to week, but he usually was scheduled to work from about 4:00 p.m. to 12:00 a.m. three or four times per week and from about 10:00 a.m. to 11:00 p.m. on Saturdays and Sundays. In total, he regularly worked fifty to fifty-eight hours per week.

86. Trejo did not work for approximately a month from about March 15 to April 15, 2020 due to the COVID-19 pandemic.

87. When Trejo returned to work for Defendants on or about April 16, 2020, he and Tigre were the only front-of-house employees at Frank's for approximately one month.

88. From on or about April 15, 2020 through about May 31, 2020, Trejo regularly worked seven days per week from about 11:00 a.m. to 10:00 p.m. for a total of about seventy-seven hours per week.

89. From about June 2020 through the end of his employment, Trejo regularly worked Saturdays from about 12:00 p.m. to 4:00 p.m., Sundays from about 12:00 p.m. to 4:00 p.m., Mondays from about 6:00 p.m. to 12:00 a.m. or 1:00 a.m., and Tuesdays from about 6:00 p.m. to 12:00 a.m. or 1:00 a.m., for a total of approximately twenty to twenty-two hours per week.

90. From the start of his employment through about April 2020, Defendants paid Trejo $10 per hour for all hours worked, including hours over forty per week.

91. From about April 2020 through September 2020, Defendants paid Trejo $15.00 per hour for all hours worked, including hours over forty per week.

92. From about October 2020 through the end of his employment, Defendants decreased Trejo's pay back to $10 per hour for all hours worked, including hours over forty per week.

93. Defendants paid Trejo below the statutory minimum wage rate, which is currently $15 per hour.

94. Although Trejo worked as a tipped employee, Defendants did not provide notice of the tip credit provisions of the FLSA and the NYLL, or an intent to apply a tip

credit to his wages. As such, Defendants were not entitled to apply a tip credit to Trejo's wages at any time during his employment.

95. Defendants did not pay Trejo overtime pay at one and one half (1 ½) times his regular hourly wage rate for hours worked over forty per week.

### FIRST CLAIM
### NYLL – Unpaid Minimum Wages

96. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

97. Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor ("NYDOL") Regulations and employed Plaintiffs.

98. The NYLL and its supporting regulations require that employers pay employees at least the minimum wage for each hour worked up to forty per workweek.

99. The minimum wage provisions of Article 19 of the NYLL and the supporting NYDOL Regulations apply to Defendants.

100. Defendants were not eligible at any time to avail themselves of the tipped minimum wage rate under the NYLL because, (1) Defendants were required to, but failed to, inform Plaintiffs Tigre and Trejo of the tip credit provisions of the NYLL and the supporting NYDOL Regulations; and (2) Plaintiffs spent 2 hours or more of their day performing non-tipped work pursuant to § 146-2.9 of the NYS Hospitality Industry Wage Order.

101. Defendants failed to pay Plaintiffs Tigre and Trejo the minimum wages to which they are entitled under the NYLL.

102. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs Tigre and Trejo minimum hourly wages.

103. As a result of Defendants' violations of the NYLL, Plaintiffs Tigre and Trejo are entitled to recover their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and post-judgment interest.

## SECOND CLAIM
## FLSA – Unpaid Overtime Wages

104. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

105. Defendants were employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed Plaintiffs.

106. Defendants were required to pay Plaintiffs one and one-half (1½) times the greater of their regular rate or the full federal minimum wage rate for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq*.

107. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the FLSA.

108. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs the proper overtime wage rate.

109. Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## THIRD CLAIM
## NYLL – Unpaid Overtime Wages

110. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

111. Defendants were Plaintiffs' employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations.

112. Under New York State Department of Labor ("NYDOL") regulations, including 12 N.Y.C.R.R. §§ 137-1.3, 146-1.4, and 146-3.5(b) Defendants were required to pay Plaintiffs one and one-half (1 ½) times their regular rate of pay for all hours worked in excess of forty per workweek.

113. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled to under the NYLL and its supporting regulations.

114. Defendants willfully violated the NYLL and its supporting regulations by knowingly and intentionally failing to pay Plaintiffs overtime wages.

115. Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre-judgment and post-judgment interest.

## FOURTH CLAIM
## NYLL – Spread-of-Hours Pay

116. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

117. Defendants have willfully failed to pay Plaintiffs additional compensation of one hour's pay at the minimum hourly wage rate for each day during which they worked more than ten hours.

118. By Defendants' failure to pay Plaintiffs spread-of-hours pay, Defendants willfully violated the NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. § 146-1.6.

119. Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover an amount prescribed by statue, reasonable attorneys' fees, pre- and post-judgment interest, and liquidated damages.

## FIFTH CLAIM
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements

120. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

121. The NYLL and the WTPA require employers to provide employees with an accurate wage statement each time they are paid.

122. Throughout Plaintiffs' employment with Defendants, Defendants paid Plaintiffs without providing them a wage statement at the end of every pay period accurately listing, *inter alia,* the regular and overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of NYLL § 195(3).

123. Due to Defendants' violation of NYLL § 195(3), Plaintiffs are entitled to recover, from Defendants, liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL § 198(1-d).

## SIXTH CLAIM
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices

124. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

125. The NYLL and the WTPA, as well as the NYLL's interpretive regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

126. Defendants failed to furnish Plaintiffs at the time of hiring, or whenever their rate of pay changed, with a wage notice containing the rate or rates of pay and basis

thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage including tip, meal, or lodging allowances; the regular payday designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

127. Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

    a.    declaring that Defendants have violated the minimum wage provisions of the NYLL;

    b.    declaring that Defendants have violated the overtime wage provisions of the FLSA, the NYLL, and the NYDOL regulations;

    c.    declaring that Defendants violated the notice and record-keeping provisions of the NYLL and WTPA;

    d.    declaring that Defendants' violations of the FLSA and the NYLL were willful;

    e.    awarding Plaintiffs damages for unpaid minimum and overtime wages;

    f.    awarding Plaintiffs damages for unpaid spread-of-hours compensation;

      g.      awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish them with wage notices and accurate wage statements pursuant to the NYLL and WTPA;

      h.      awarding Plaintiffs liquidated damages in an amount equal to the total amount of wages found to be due pursuant to the FLSA;

      i.      awarding Plaintiffs pre-judgment and post-judgment interest under the NYLL;

      j.      awarding Plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

      k.      awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
       April 22, 2022

PECHMAN LAW GROUP PLLC

By: _____
Louis Pechman
Gianfranco Cuadra
Pechman Law Group PLLC
488 Madison Avenue - 17th Floor
New York, New York 10022
(212) 583-9500
pechman@pechmanlaw.com
cuadra@pechmanlaw.com
*Attorneys for Plaintiffs*